UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERINEO GARZA,<br><br>        Plaintiff,<br><br>    v.<br><br>CORIZON; SUSANNA CAMMANN, DDS; GEN BREWER; AMANDA TILLEMANS; and RONA SIEGERT,<br><br>        Defendants. | Case No. 1:19-cv-00275-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This case involves Eighth Amendment claims brought by inmate Erineo Garza against Defendants Corizon, LLC ("Corizon"), Dr. Susanna Cammann, Amanda Tillemans, Gen Brewer, and Rona Siegert.[1]

Pending before the Court are Garza's Motion for Summary Judgment (Dkt. 27) against all Defendants; Corizon, Dr. Cammann, Tillemans, and Brewer's (collectively the "Corizon Defendants") Motion for Summary Judgment (Dkt. 28); Garza's "Request to Grant Summary Judgment Against Defendant Rona Siegert" (Dkt. 32); Garza's Motion to Strike (Dkt. 34); and Siegert's Motion for Summary Judgment (Dkt. 37). The parties have filed their responsive briefing on the motions and/or the time for doing so has passed without response.

---

[1] Additional named defendants were dismissed in the Court's Initial Review Order. Dkt. 5.

Having reviewed the record, the Court finds the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court decides the pending motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons stated herein, the Court will DENY Garza's Motion for Summary Judgment against the Corizon Defendants (Dkt. 27); GRANT the Corizon Defendants' Motion for Summary Judgment (Dkt. 28); DENY Garza's Request to Grant Summary Judgment Against Rona Siegert (Dkt. 32); DENY Garza's Motion to Strike (Dkt. 34) and GRANT Siegert's Motion for Summary Judgment (Dkt. 37).

## II. BACKGROUND[2]

Garza is an Idaho Department of Corrections ("IDOC") inmate incarcerated in the Idaho State Correctional Institution ("ISCI"). Garza is missing nearly all of his teeth and requires the use of full upper dentures and partial lower dentures. Under IDOC's standard operating procedure for oral care ("Dental SOP"), inmates may be provided dentures at the discretion of the attending dentist. Inmates are eligible to receive replacement dentures or new dentures every five years. The Dental SOP classifies denture-related dental treatment as non-emergency dental treatment. To receive access to non-emergency dental treatment, inmates must submit a Health Services Request ("HSR").

Garza's dental history shows he had full upper and lower partial dentures made in

---

[2] Unless otherwise noted, the following facts are undisputed.

approximately November of 2014, before he was incarcerated.[3] After Garza was incarcerated and filed an HSR for dentures, Dr. Cammann provided him with a new set of full upper dentures and partial lower dentures on May 11, 2017.[4] Dr. Cammann gave Garza written and verbal instructions for care of his new dentures.[5] She also advised Garza that the new dentures should not be worn at night, that sore spots were expected to develop as his mouth adjusted to the new dentures, and how to clean and chew with the new dentures.

On September 13, 2017, Garza knocked a tooth out of his partial lower dentures. Dr. Cammann sent the lower dentures to the lab for repair and delivered the repaired dentures to Garza on October 2, 2017. On March 1, 2018, Garza submitted an HSR stating his lower partial denture was again broken. Dr. Cammann saw Garza the next day and noted both his upper and lower dentures were broken. Garza told Dr. Cammann he had broken his dentures by sneezing. Although she was suspicious of this explanation given her understanding that it was highly unusual for a sneeze to dislodge—much less damage— dentures, Dr. Cammann again sent Garza's dentures to the lab to be repaired.

On March 27, 2018, Dr. Cammann gave Garza his repaired upper and lower dentures and adjusted them to make sure they fit correctly in his mouth. Dr. Cammann told

---

[3] Garza's medical records suggest he had full upper and lower partial dentures made and fitted for him in Caldwell, Idaho, in November of 2014. Dkt. 28-6, ¶ 9. On summary judgment, Garza disputes that his 2014 dentures were made in Caldwell. Dkt. 33, at 2. Although immaterial, the Court notes the dispute and has omitted reference to where Garza's 2014 dentures were purportedly made.

[4] Dr. Cammann is a dentist who, from September 30, 2016, to March 9, 2020, was employed full-time by Corizon to provide general dental care for inmates at ISCI.

[5] Garza also suggests "Dr. Cammann never gave [him] an instruction sheet but read [the instructions] to him as he has a hard time understanding things, can barely read and being Spanish the English language is hard for him to comprehend." Dkt. 33, at 2–3. The dispute is immaterial because Garza concedes Dr. Cammann verbally went over the instructions with him.

Garza to submit an HSR if the dentures started to bother him or if he believed they needed to be adjusted. On August 17, 2018, Garza submitted an HSR complaining that his upper dentures were causing him to bite his cheek. On September 9, 2018, Dr. Cammann adjusted Garza's upper dentures.

On October 8, 2018, Dr. Cammann removed one of Garza's remaining four lower teeth due to a periapical abscess. This left Garza with three remaining teeth. During the appointment, Dr. Cammann noted both Garza's upper and lower dentures—which had been adjusted less than a month earlier—were already showing signs of aesthetic damage. When Dr. Cammann advised Garza that he needed to take better care of his dentures, he informed her the damage was caused when he dropped his dentures and stepped on them.

On December 13, 2018, Garza submitted an HSR to seek repairs for damage to his lower partial dentures. On January 4, 2019, Dr. Cammann examined Garza's dentures and found one tooth was missing. Dr. Cammann concluded the missing tooth did not interfere with Garza's ability to chew food, the damage was merely aesthetic, and that sending the dentures to the lab for another repair was not medically necessary. Dr. Cammann noted this was the third instance where Garza had negligently damaged his dentures and informed Garza she would no longer send his dentures to the lab to repair aesthetic damage that lacked medical necessity. During the January 4, 2019 appointment, Dr. Cammann did smooth the corners of two of Garza's natural teeth, which Garza complained were sharp.

On March 5, 2019, Garza again submitted an HSR requesting repair of his dentures. During an appointment with him on March 14, 2019, Dr. Cammann asked Garza if he was wearing his dentures overnight because the wear pattern appeared consistent with such

practice. When Garza indicated he was not, Dr. Cammann instructed Garza not to wear his dentures overnight and reminded him his dentures would no longer be repaired for aesthetic reasons because it was apparent he was not taking care of them and because they had already been repaired several times in the last year. Garza complained he was unable to eat tortillas due to the damage to his dentures, but Dr. Cammann found Garza had an even bite and concluded it was realistic for him to bite tortillas with the posterior teeth of his dentures. On summary judgment, Garza disputes that he could eat properly, and notes Dr. Cammann did not observe him during meals and could not see how hard it was for him to chew his food or to digest unchewed food as a result of the damage to his dentures.

On April 29, 2019, Garza received a routine annual dental checkup. During the visit, Dr. Cammann found Garza's overall oral hygiene was extremely poor. Garza's remaining three teeth had heavy plaque and tartar buildup, which suggested he was either not brushing his teeth properly or was not brushing his teeth at all. During the appointment, a dental hygienist reminded Garza he was not yet eligible for new dentures pursuant to the Dental SOP.

On May 1, 2019, Garza submitted a formal request for new dentures. Dr. Cammann denied the request on May 7, 2019, stating replacement dentures were not medically indicated because Garza's existing dentures were still functional. On May 10, 2019, Garza submitted an HSR complaining that his dentures were broken and sharp wires were poking his gums. On May 14, 2019, Garza submitted a grievance stating his upper dentures were missing teeth, his lower dentures were broken with protruding wires digging into his gums, and that he suffered a lot of pain and couldn't chew his food as a result. Garza then

requested repair of his dentures so he could eat properly.

On May 17, 2019, Dr. Cammann met with Garza to address his complaints. Dr. Cammann did not find any protruding wires near the #28 junction, where Garza complained wires were poking his gums. Dr. Cammann noted the wires near the #28 juncture were still coated with acrylic and were unexposed. Although he also complained of mouth sores, Dr. Cammann could not find any sores in Garza's mouth. Dr. Cammann smoothed and polished around the #28 juncture, adjusted and reinforced the lingual cusp of Garza's dentures, and ultimately concluded the issues of which Garza complained were likely due to his poor oral hygiene, and not to any problem with the dentures. For instance, although Garza had just had a cleaning less than a month earlier, his natural teeth were already built up with heavy plaque and debris. When Dr. Cammann asked Garza whether he was intentionally failing to brush his teeth so his remaining teeth would be pulled, Garza responded, "yes." Dkt. 28-13, at 6. Dr. Cammann determined there was no clinical reason to remove Garza's three remaining teeth because they were non-mobile and served as good anchors for Garza's partial lower dentures. Dr. Cammann also again concluded there was no medical indication Garza's dentures needed to be repaired because they were functioning properly.

On summary judgment, the Corizon Defendants highlight Garza's commissary records from 2018 and 2019 undermine his allegations that he was unable to eat properly due to his dentures. For instance, in the days after Dr. Cammann's May 17, 2019 appointment with him, Garza continued to purchase, and presumably eat, many items he would be unable to consume without functioning dentures, including Whoppers, Milk

Duds, chips, tortillas, nuts, cookies, crackers, cereal, and popcorn. Dkt. 28-6, at ¶ 25. Dr. Cammann also notes Garza is morbidly obese, and that this would not be possible if he was unable to eat. *Id*. Garza responds that his commissary purchases and weight are irrelevant and have nothing to do with his dentures. Dkt. 33, at 5.

On May 21, 2019, Gen Brewer, a Registered Nurse and Director of Nursing at ISCI, responded to Garza's May 14, 2019 grievance. In her response, Brewer stated: "You were seen by the dentist on 5/17/19. She looked at and evaluated your partial. I hope your concerns were addressed. Please brush your teeth and take care of the partial you have." Dkt. 28-5, at 2. On May 23, 2019, Amanda Tillemans, the then-Health Service Administrator at ISCI, reviewed Garza's grievance and Brewer's response. Tillemans denied Garza's request for new dentures, noting Dr. Cammann performed a thorough evaluation of Garza's teeth, gums, and dentures on May 17, 2019, and made sure there was nothing to cause him significant pain or discomfort. Garza appealed Tillemans' denial.

On June 18, 2019, Rona Siegert, the Healthcare Services Director for IDOC, affirmed the denial of Garza's grievance. Siegert noted Dr. Cammann's examination of Garza's dentures on May 17, 2019, did not reveal any exposed wires and that Dr. Cammann smoothed out Garza's lower partial dentures to ensure he would not feel anything sharp. Siegert encouraged Garza to take care of his dentures and remaining natural teeth. Siegert also reminded Garza he was not yet eligible for replacement dentures under IDOC's Dental SOP.

Garza filed the instant suit on July 11, 2019. Garza brings Eighth Amendment claims pursuant to 42 U.S.C. § 1983, and alleges Defendants were deliberately indifferent

to his serious dental needs by failing to replace his dentures. Garza claims Defendants'
failure to replace his damaged dentures caused him needless pain and suffering, loss of
sleep, loss of appetite, and severe stomach problems due to not being able to properly chew
and digest his food.

### III. ANALYSIS

In addition to his Motion for Summary Judgment, Garza filed two motions which
essentially seek to strike the Corizon Defendants' and Siegert's respective Responses to
his Motion for Summary Judgment. The Corizon Defendants and Siegert have also filed
cross-Motions for Summary Judgment. Because resolution of Garza's procedural motions
will determine what evidence and briefing the Court considers on summary judgment, the
Court addresses the procedural motions first, and then turns to the various motions for
summary judgment.

### A. Request to Grant Summary Judgment against Siegert (Dkt. 32) and Motion to Strike (Dkt. 34) the Corizon Defendants' Response[6]

Garza filed a Motion for Summary Judgment—against the Corizon Defendants and
Siegert—on July 10, 2020. Dkt. 27. The Corizon Defendants and Siegert both responded
to Garza's Motion for Summary Judgment on July 31, 2020. Dkt. 29; Dkt. 30. In his
procedural motions, Garza first suggests summary judgment should be entered against
Defendants because their Responses were untimely filed.

---

[6] Garza apparently filed his Request to Grant Summary Judgment against Siegert, and Motion to Strike the
Corizon Defendants' Response, in lieu of a Reply in support of his Motion for Summary Judgment, as he
did not file a Reply to either Siegert's or the Corizon Defendants' Responses to his Motion for Summary
Judgment. Similarly, Siegert filed a Reply to Garza's Request to Grant Summary Judgment against her but
did not file a Reply in support of her cross-Motion for Summary Judgment.

Garza argues both Federal Rule of Civil Procedure 56 and Local Civil Rule 7.1(c)(1) for the District of Idaho require a party to respond to a motion for summary judgment within twenty-one days after the motion is filed. Although the Corizon Defendants and Siegert filed their Responses to Garza's Motion for Summary Judgment on July 31, 2020—twenty-one days after Garza's July 10, 2020 Motion for Summary Judgment was filed and served—Garza contends his Motion for Summary Judgment was instead filed on July 8, 2020. Garza argues Defendants' Responses are purportedly two days late and, as such, cannot be considered by the Court on summary judgment. Garza is mistaken.

Garza appears to believe that because he signed his Motion for Summary Judgment and supporting documents on July 8, 2020, the documents were also filed and served on Defendants on that date. Dkt. 32, at 1; Dkt. 34, at 1. However, as the Mailing Authorization submitted with Garza's Motion for Summary Judgment illustrates, ISCI could not file Garza's Motion for Summary Judgment electronically on June 8, 2020, due to a network issue. Dkt. 27-4. The paralegal for ISCI accordingly approved filing by mail. *Id*. The Clerk of the Court's date stamp on Garza's Motion for Summary Judgment—as well as the Clerk of the Court's date stamp on each of Garza's supporting documents (including the envelope they arrived in)—illustrates the Court did not receive Garza's Motion for Summary Judgment and supporting documents until July 10, 2020. *See*, Dkt. 27, 27-1–27-11. The Court electronically filed Garza's Motion and supporting documents on July 10, 2020, and the Corizon Defendants and Siegert were served, by virtue of the ECF filing, on the same date. The Corizon Defendants and Siegert then timely filed their responses on July 31, 2020, exactly twenty-one days after the July 10, 2020 filing. Garza's argument regarding

the timing of Defendants' Responses is accordingly baseless.

Garza also argues summary judgment should be entered against the Corizon Defendants and Siegert pursuant to Federal Rule of Civil Procedure 56(c) and Local Civil Rule 7.1(c) because they did not file an affidavit or statement of disputed facts with their Responses to his Motion for Summary Judgment. Garza suggests the Corizon Defendants and Siegert have accordingly consented to entry of summary judgment against them. Again, Garza misunderstands the record.

In addition to responding to Garza's Motion for Summary Judgment on July 31, 2020, the Corizon Defendants also filed a cross-Motion for Summary Judgment the same day. Dkt. 28. When a cross-movant's filing in support of its own motion for summary judgment contains specific facts that answer the movant's motion for summary judgment, there is no need to file the same materials both in opposition to the movant's motion and with the cross-motion. William W. Schwarz, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992); *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001) (rejecting party's position that the court need not consider evidence submitted in support of a cross-movant's motion for summary judgment if that evidence was not also specifically filed with the cross-movant's response to the movant's motion).[7]

As explained below, here the Corizon Defendants' cross-Motion for Summary

---

[7] Of course, if a party's cross-motion and evidentiary support do not adequately respond to the other party's motion, the cross-movant must file an opposition or risk a judgment against it for failure to oppose a properly supported motion. *Schwarz*, 139 F.R.D. at 500.

Judgment contains specific facts to answer those raised in Garza's Motion. Rather than submitting the same facts with their Response to Garza's Motion for Summary Judgment, the Corizon Defendants filed a statement of undisputed facts and supporting evidence with their cross-Motion for Summary Judgment (Dkt. 28-2), which they explicitly incorporated by reference in their Response to Garza's Motion for Summary Judgment. Dkt. 29, at 1–2. In an attempt to avoid duplicative filing, Siegert also incorporated the Corizon Defendants' statement of undisputed facts by reference in her Response to Garza's Motion for Summary Judgment (Dkt. 30, at 3)[8], as well as in her subsequent cross-Motion for Summary Judgment (Dkt. 37-1, at 3).

Defendants' attempt to avoid duplicative filing and to preserve judicial economy by filing one statement of facts (rather than three duplicative versions of the same facts), as well as one declaration for each defendant (instead of three duplicate declarations for each defendant) not only complies with Federal Rule of Civil Procedure 56(c) and District of Idaho Local Rule 7.1(c), but is encouraged by the Court. *See* Judge Nye's Motion Practice Guidelines, *available at* https://id.uscourts.gov/district/judges/nye/Motion_Practice.cfm.[9]

In short, Garza's Request to Grant Summary Judgment against Rona Siegert (Dkt. 32) and Motion to Strike the Corizon Defendants' Response (Dkt. 34) are meritless and are

---

[8] Siegert also incorporated the Declarations of Cammann, Brewer, and Tillemans (and supporting evidence, including Garza's medical records) by reference in her Response to Garza's Motion for Summary Judgment. Dkt. 30, at 8–11.

[9] In fact, the Court would have preferred for Defendants to avoid even *further* duplication by filing their respective responses to Garza's Motion for Summary Judgment combined in the same brief with their respective cross-Motions for Summary Judgment. *Id.* Although they were not required to do so, such practice could have avoided Garza's misplaced procedural argument, as well as the panoply of briefs on summary judgment filed in this case.

therefore DENIED.

## B. Cross-Motions for Summary Judgment

### 1. *Summary Judgment Standard*

Summary judgment is appropriate where the moving party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must enter summary judgment if, after adequate time for discovery and upon motion, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses[.]" *Id*. at 323. It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Material facts are those "that might affect the outcome of the suit under the governing law[.]" *Id.* at 248. Summary judgment is not appropriate if the dispute about a material fact is "genuine," that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The Court's role at summary judgment is not "to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court does not make credibility determinations at this stage of the litigation, as such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). In considering a motion for summary judgment, the Court must also "view[] the facts in the non-moving party's favor[.]" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

However, the Court need not accept allegations by the non-moving party if such allegations are not supported by sufficient evidence. *Anderson*, 477 U.S. at 249. Instead, once the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial.'" *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting the nonmoving party must "identify with particularity the evidence that precludes summary judgment."). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (cleaned up).

Finally, when cross-motions for summary judgment on the same claim are before the court, "the court has an independent duty to review each cross-motion and its supporting evidence." *Fair Housing Council*, 249 F.3d at 1137. "The filing of cross-motions does not ensure that summary judgment is in order. Each motion must be considered on its own merits, and both may be denied." *Schwarz*, 139 F.R.D. at 499. Thus, even in cases in which both parties believe there are no material factual issues, the court

has a responsibility to analyze whether the record on cross-motions for summary judgment demonstrates the existence of material fact precluding summary judgment. *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1037 & n.5 (9th Cir. 2000).

### 2. Deliberate Indifference Standard

Garza contends the Defendants have subjected him to inadequate medical treatment in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. With respect to medical care for inmates, the Eighth Amendment is violated when prison officials demonstrate "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to establish deliberate indifference, an inmate must satisfy objective and subjective components of a two-part test. *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). First, the prisoner must show a "serious medical need" by "demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (cleaned up).

Second, the inmate must show the defendant's "response to the need was deliberately indifferent." *Id*. To satisfy the subjective test—that the defendant's response to a serious medical need was deliberately indifferent—a plaintiff must show both that: (1) the course of treatment the defendant chose was medically unacceptable under the circumstances; and (2) the defendant chose this course in conscious disregard of an excessive risk to the plaintiff's health. *Edmo v. Corizon*, 935 F.3d 757, 786 (9th Cir. 2019) (citations omitted).

The subjective component is intended to preclude a finding of deliberate

indifference for accidents or inadvertent or even negligent failure to provide medical care. *Estelle*, 429 U.S. at 105–06; *Hutchinson v. United States*, 838 F.2d 390, 394 (1988); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("ordinary lack of due care" is insufficient to establish deliberate indifference). As such, deliberate indifference entails something more than medical malpractice or even gross negligence. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, a deliberate indifference claim against a medical provider requires a showing that the defendant acted with subjective recklessness. *Id.* at 839–40.

Finally, even if deliberate indifference is shown, the prisoner must demonstrate harm caused by the indifference to state an Eighth Amendment claim. *Jett*, 439 F.3d at 1096; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (explaining delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful).

To bring a constitutional claim under § 1983 against a municipality or other government entity, a plaintiff cannot rely on respondeat superior liability. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). Under *Monell*,[10] a municipality or

---

[10] Where, as here, an inmate claims a private entity like Corizon has violated his constitutional rights, the plaintiff must satisfy the test articulated in *Monell*. *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138–40 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law).

entity is subject to liability only if: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

### 3. *Garza's Motion for Summary Judgment (Dkt. 27)*

Garza argues Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by refusing to provide him with "proper upper and lower plate dentures that [do not] have missing teeth, wires protruding and rubbing on and cutting into his gum[s]." Dkt. 27-1, at 2. Liberally construed, Garza contends Defendants failed to provide necessary dental care because of IDOC's Dental SOP, and, in relying on the Dental SOP rather than medical necessity, Defendants were deliberately indifferent to his serious dental needs. *United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2000) (explaining pro se complaints and motions from prisoners must be liberally construed).

### a. Garza's Eighth Amendment Claim

Although not addressed by the parties, it appears Garza's significant dental issues—including the loss or extraction of nearly all of his teeth—constitutes a serious medical need. The Court assumes, without deciding, that Garza's dental condition is a serious medical need. However, Garza fails to establish that Defendants acted with deliberate indifference to his dental condition in his Motion for Summary Judgment.

"Dental care is one of the most important medical needs of inmates." *Hunt*, 865 F.2d at 200 (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). As such, the Eighth

Amendment requires "that prisoners be provided with a system of ready access to adequate dental care." *Hunt*, 865 F.2d at 200 (citation omitted). Here, Garza has clearly had ready access to dental care. For instance, between May 11, 2017 and May 17, 2019, Dr. Cammann provided Garza with new dentures, repaired Garza's new dentures three times, removed Garza's abscessed tooth, cleaned Garza's teeth, and treated Garza in multiple additional appointments.[11] The relevant question in this case is thus not whether Garza received dental care, but whether Defendants were deliberately indifferent to Garza's dental condition by failing to provide him with replacement dentures.

In his Motion for Summary Judgment, Garza devotes his argument almost entirely to the Dental SOP, contending Defendants' deliberate indifference to his serious dental needs "is based upon [their] customs, practices, protocols and policies generated and revolving around administrative convenience and costs that are unrelated to Plaintiff's serious dental needs and violate standards of dental care in an evolving society." Dkt. 27-1, at 2. Garza argues he was denied new dentures solely because he was not eligible for them under the Dental SOP. *Id.* at 4–6; Dkt. 27-2, ¶¶ 1, 3, 6; Dkt. 27-3, ¶¶ 7–10, 14. Garza also contends the Dental SOP is "on its face unconstitutional," and that it subjects not only Garza, but all other inmates who need replacement dentures within a five-year span, to cruel and unusual punishment. Dkt. 27-1, at 4–5.

---

[11] *See*, *supra*, Section II (May 11, 2017 new dentures; October 2, 2017 delivery of repaired dentures; March 2, 2018 appointment; March 27, 2018 delivery of repaired dentures; September 9, 2018 appointment to adjust dentures; October 8, 2018 removal of abscessed tooth; January 4, 2019 appointment; March 14, 2019 appointment; April 29, 2019 cleaning;  May 17, 2019 appointment including denture repair). Of his seven dental appointments between March 1, 2018 and May 17, 2019, six were made at Garza's request to adjust or repair his dentures.

In focusing solely on the Dental SOP, Garza neglects to first show replacement dentures were medically necessary in his case. Garza does not offer any evidence—whether from a Corizon medical provider, an expert, or any other source—to suggest Defendants provided constitutionally inadequate medical care in denying his request for replacement dentures. Garza also completely ignores the evidence showing Dr. Cammann, his treating dentist, did not simply deny him replacement dentures due to the Dental SOP, but instead frequently repaired and evaluated his dentures, and repeatedly concluded replacement dentures were not medically necessary. Dkt. 28-2, ¶¶ 10–12, 14, 16–17, 19, 22. In order for the Court to assess whether the Dental SOP is unconstitutional, Garza must first show that Defendants' refusal to replace *his* dentures was medically unacceptable and chosen in conscious disregard of an excessive risk to his health. Without such showing, Garza lacks standing to challenge the Dental SOP. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions.") (cleaned up); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The [Article] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally.").

Garza is not entitled to summary judgment because he does put forth evidence to establish as a matter of law—or even address—whether Defendants' failure to give him

replacement dentures was medically unacceptable. *Edmo*, 935 F.3d at 786. Nor does Garza show that Defendants denied him replacement dentures in conscious disregard of an excessive risk to his health. *Id*. While Dr. Cammann contends Garza does not need replacement dentures because his current dentures, although aesthetically damaged, are fully functional, Garza does not offer any evidence other than his own opinion to show replacement dentures are medically necessary. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (citing *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970)).

In addition to his claims regarding the Dental SOP, Garza argues "delay in providing dentures is deliberate indifference," and cites several cases in support. Dkt. 27-1, at 5–6. Each is inapposite. In *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), the Seventh Circuit held the district court erred in granting defendant's Motion to Dismiss an inmate's Eighth Amendment claim with respect to his dentures. Like Garza, the inmate in *Wynn* alleged he was unable to chew his food without dentures, significantly impending his ability to eat.[12] *Id*. The Seventh Circuit held such allegations were sufficient to state an Eighth Amendment claim at the Motion to Dismiss stage of the litigation. In its Initial Review Order, this Court similarly held Garza's allegations regarding his inability to eat without replacement dentures were sufficient to plead an Eighth Amendment claim.[13] To

---

[12] Incidentally, unlike Garza, the inmate in *Wynn* did not have any dentures, and alleged prison officers deliberately misplaced his dentures when they removed him from the general prison population to the prison's Isolation Detention Unit.

[13] Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b), the Court's Initial Review Order screened Garza's Complaint for failure to state a claim upon which relief may be granted.

obtain summary judgment, Garza must offer much more than unsupported allegations. As the moving party with the ultimate burden of proof at trial, Garza must present evidence which would entitle him to a directed verdict if the evidence were to go uncontroverted at trial. *Miller v. Glenn Miller Prods.*, 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted). Garza's unsubstantiated allegations regarding his need for replacement dentures fall far short of meeting this standard.

Garza next cites to *Dean v. Coughlin*, 623 F. Supp. 392 (S.D.N.Y. 1985), where the district court concluded plaintiffs, who represented a class of female inmates incarcerated at the Bedford Hills Correctional Facility, were entitled to a preliminary injunction ordering defendants to provide adequate dental care to inmates at the facility. In finding plaintiffs were likely to succeed on the merits of their Eighth Amendment claim, the court held, among other things, that the record indicated the prison's provision of dentures was severely lacking. *Id*. at 399. For instance, a dental hygienist first recognized one plaintiff needed dentures during a visit in December of 1983, but the plaintiff did not receive dentures until April of 1985. A prison dentist first identified another plaintiff's need for full dentures on October 29, 1983, and all of the inmate's teeth were extracted in preparation for new dentures in December of 1983. However, the inmate did not receive new dentures until March of 1985. During the fifteen months she was without dentures, the plaintiff lost so much weight she had to be placed on a food supplement. *Id*. By contrast, here Dr. Cammann repeatedly evaluated Garza's dentures and consistently determined he does not have a medical need for replacement dentures because his existing dentures are functional.

MEMORANDUM DECISION AND ORDER - 20

Similarly, in *Farrow v. West*, 320 F.3d 1235, 1244 (11th Cir. 2003), a prison dentist acknowledged an inmate's medical need for dentures on October 19, 1999. Yet, the inmate did not receive dentures until January 2001. During the fifteen months he was without dentures, the inmate suffered significant weight loss, pain and bleeding gums. The defendant dentist recognized the inmate's weight loss and advised the inmate he needed a physical examination. In reversing summary judgment in favor of the defendant dentist, the Eleventh Circuit explained there was sufficient evidence to support the inmate's Eighth Amendment claim because the defendant dentist: (1) determined dentures were medically necessary; (2) was repeatedly made aware of the inmate's problematic weight loss as a result of not having dentures; and (3) still delayed in providing the innate with dentures for more than a year. *Id.* The *Farrow* Court held the defendant dentist's "substantial and inordinate delay in treatment raise[d] a jury question as to [defendant's] deliberate indifference towards Farrow's serious medical need." *Id.* at 1246. Unlike in *Farrow*, here the prison dentist instead determined replacement dentures were not medically necessary. Garza does not put forth any evidence to call Dr. Cammann's conclusion into question. And, as further discussed below, Dr. Cammann was also unable to verify any of Garza's purported symptoms, despite repeated appointments with Garza and multiple evaluations of his dentures. *See generally* Dkt. 28-6.

Finally, in *Hunt*, 865 F.2d at 199, an inmate lost his dentures in a prison riot and made repeated requests for dental treatment and replacement dentures. The inmate's requests were ignored, and he ultimately filed a grievance claiming his remaining teeth were breaking, his gums were bleeding and infected, and he was suffering pain and weight

loss. Despite being aware of the inmate's symptoms, the prison dentist did not see the inmate for another three months. *Id*. In reversing summary judgment in favor of the defendant dentist and others, the Ninth Circuit explained, "Hunt alleged, and the defendants did not dispute, that there was a delay of more than three months before Hunt was treated. Given the serious dental problems which Hunt alleges he repeatedly complained about . . . it reasonably could be concluded that the delay was deliberate[.]" *Id*. at 201. Here, Garza's medical records instead show he has had an appointment with Dr. Cammann every time he requested one, including six dental appointments in a little over a year. Garza's only grievance was also promptly answered (although, after an appointment with Dr. Cammann, it was ultimately denied). Like the other cases he cites, *Hunt* is distinguishable and does not support Garza's claim of deliberate indifference.[14]

In addition to his argument regarding the Dental SOP and citation to the aforementioned cases, Garza raises two misplaced procedural arguments against the Corizon Defendants on summary judgment. First, Garza implies he is entitled to summary judgment because the Corizon Defendants did not produce the contract governing Corizon's medical care and services to IDOC during discovery. Dkt. 27-1, at 2–3. While Corizon objected to Garza's request for the contract in its response to Garza's First Set of Interrogatories and Requests for Documents, it directed Garza to IDOC officials to review the copy of the contract that IDOC makes available to inmates. Dkt. 27-7, at 2. If Garza

---

[14] In the two other cases Garza cites, *Field v. Gander*, 734 F.2d 1313, 1314 (8th Cir. 1984) and *Hartsfield v. Colburn*, 371 F.3d 454, 456 (8th Cir. 2004), there was evidence that defendants deliberately ignored the plaintiffs' repeated pleas for dental care. By contrast, Dr. Cammann saw Garza and evaluated his dentures every time he asked her to. Dkt. 28-2, ¶¶ 11, 14, 16, 17, 20, 21, 22.

was dissatisfied with this response, he should have followed the discovery dispute procedure set forth in Federal Rule of Civil Procedure 37 and Local Civil Rule 37.1. Garza's Motion for Summary Judgment is not the proper avenue to seek additional discovery from the Corizon Defendants.

Moreover, even if his procedural argument was appropriately raised, the Corizon Defendants' response to Garza's discovery request did not provide grounds to enter judgment against them. Garza was not denied access to the contract and, absent a showing of a constitutional violation, the Court lacks jurisdiction to review Garza's claims regarding Corizon's purportedly unconstitutional policy. *See, e.g., Warth*, 422 U.S. at 499 ("A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action[.]'") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)).

Second, Garza contends the Corizon Defendants did not dispute the factual allegations of his Complaint because they claim in their Answer, "the actions of Corizon Defendants have at all times been in reliance on the policies and procedures of the Idaho Department of Corrections, and these policies and procedure are rationally related to legitimate penological objectives." Dkt. 27-1, at 4. Although the Corizon Defendants raised the Dental SOP as one of several affirmative defenses to Garza's allegations in their Answer (Dkt. 15, at 10) they also specifically denied each of Garza's allegations regarding their purported deliberate indifference. *Id*. at 5–9. Garza's claim that the Corizon Defendants did not dispute his factual allegations is inaccurate and is not a reason to enter summary judgment in his favor.

MEMORANDUM DECISION AND ORDER - 23

In sum, Garza has not presented evidence to establish the elements of a deliberate indifference claim with respect to any of the Defendants. Because Garza fails to set forth substantial and competent evidence to show he is entitled to judgment as a matter of law, Garza's Motion for Summary Judgment is DENIED.

### 4. *The Corizon Defendants' Motion for Summary Judgment (Dkt. 28)*

In his Complaint, Garza generally alleges replacement dentures are medically necessary because his upper denture "has teeth missing and [he] is unable to properly chew his food for digestion and when he tries the upper plate flops around and causes him pain." Dkt. 3, ¶¶ 30–31. Garza also contends the "lower partial plate is broken with wires protruding which dig into his gums when he attempts to chew his food." *Id.*, ¶ 31. Garza suggests the "lack of proper dentures subjects Plaintiff to cruel and unusual treatment as the broken dentures cause[] Plaintiff pain, discomfort, an inability to adequately chew his food, bleeding and swollen gums serving no penological or rational and legitimate purpose." *Id.*, ¶ 32. The Corizon Defendants argue they are entitled to summary judgment because there is no evidence to suggest Dr. Camman's medical care satisfies either prong of the subjective deliberate indifference standard. The Court must agree.

a. Dr. Cammann

First, all of the evidence in the record suggests Dr. Cammann's decisions with respect to Garza's dentures were medically appropriate. After providing Garza with new dentures in May of 2017, Dr. Cammann twice sent Garza's dentures to the lab for repair upon Garza's request—once in October of 2017 and again in March of 2018. It is not clear from the record whether Garza's dentures were functionally, or merely aesthetically,

damaged when Dr. Cammann sent them to the lab for repair in the Fall of 2017 and Spring of 2018.[15] However, when Garza submitted another HSR seeking repair for damage to his dentures on December 13, 2018, Dr. Cammann determined a third repair was not necessary since the damage was aesthetic and not functional.

Specifically, upon examination of Garza's dentures on January 4, 2019, Dr. Cammann noted one tooth was missing. Dkt. 28-6, ¶ 17. Dr. Cammann determined the missing tooth did not impair functionality because Garza still had 13 upper teeth to function, while a normal full denture has 14 teeth. *Id*. Dr. Cammann noted that despite the missing tooth Garza "still had posterior occlusion (effective contact of the molar and bicuspid teeth) with lateral excursion which is the reason removable prosthodontic appliances are fabricated to help a patient achieve functionality." *Id*. Dr. Cammann concluded it was not medically necessary to send Garza's dentures to the lab for repairs for a third time in January of 2019 because there was no reason the damage would impair his ability to masticate food.[16] *Id*. Dr. Cammann explained it would be necessary to send dentures to the lab or order new dentures if Garza could not eat, developed serious sores in his mouth as a result of ill-fitting dentures that could not be adjusted in clinic, or if Garza

---

[15] As noted, in addition to twice sending Garza's dentures to the lab for repair, Dr. Cammann also adjusted Garza's dentures on September 9, 2018 when he complained they were causing him to bite his cheek, removed one of Garza's existing teeth due to a periapical abscess on October 8, 2018, and gave Garza a routine annual dental checkup on April 29, 2019. Dkt. 28-2, ¶¶ 14, 15, 18. Garza does not challenge such care on summary judgment.

[16] The Corizon Defendants note Garza admitted he could chew food with his dentures more than five months after his January 2019 appointment with Dr. Cammann because, during a mental health screening on June 25, 2019, after he was removed to restrictive housing, Garza noted his anxiety would decrease once he was given  his (existing) dentures so he could eat. *Id*.; *see also* Dkt. 28-10, at 14. Garza does not address this claim on summary judgment.

was not able to open and close his mouth in a normal manner. *Id.*, ¶ 18. Dr. Cammann found Garza had none of these issues upon her January 4, 2019 evaluation. *Id.* Nevertheless, Dr. Cammann did smooth the corners of two of Garza's natural teeth to address his complaint that such teeth were sharp. *Id.*, ¶ 17.

On March 5, 2019, Garza again submitted an HSR requesting that his dentures be repaired. Dr. Cammann saw Garza on March 14, 2019, and reevaluated his dentures. During the March 14, 2019 appointment, Garza complained of a sore spot on his lower molar region. Dkt. 28-13, at 9. Dr. Cammann adjusted Garza's dentures and Garza confirmed his dentures felt better upon adjustment. *Id.* When Garza complained that he could not eat tortillas with his dentures, Dr. Cammann again checked his bite and determined he had even occlusion, meaning he could realistically bite tortillas with the posterior teeth on his dentures. *Id.*; Dkt. 28-6, ¶ 20. Dr. Cammann also noted that Garza's lower partial dentures appeared secure and did not rock loose, and that his remaining three teeth (although in bad shape due to calcium buildup and heavy plaque suggestive of a failure to brush his teeth) served as a good anchor for his partial lower dentures. Dkt. 28-6, ¶ 20. Ultimately, Dr. Cammann concluded the damage to Garza's anterior denture teeth was aesthetic and did not impede his ability to masticate his food, which is a function performed by the posterior teeth. *Id.*

On May 1, 2019, Garza submitted a formal request for new dentures. Dr. Cammann denied the request because Garza's existing dentures were still functional, and because he was not yet eligible for new dentures under the Dental SOP. *Id.*, ¶ 22. In denying Garza's request, Dr. Cammann reiterated that there was no medical indication that Garza's dentures

needed to be replaced. *Id*.

Following Dr. Cammann's denial, Garza submitted an HSR complaining his dentures were broken and that sharp wires were exposed and poking his gums. Dr. Cammann had another appointment with Garza on May 17, 2019, and again examined his dentures. Upon evaluation, Dr. Cammann could not find any exposed or sharp wires. *Id*., ¶ 23. Dr. Cammann checked the specific area where Garza claimed wires were protruding, and found the area was still coated with acrylic and the wires were unexposed. *Id*. Nonetheless, Dr. Cammann smoothed and polished the area. *Id*. Although Garza also complained of sores in his mouth, Dr. Cammann could not find any mouth sores upon examination. *Id*. Dr. Cammann determined Garza's complaints were likely related to poor oral hygiene, and again found there was no medical indication that replacement dentures were necessary because Garza's existing dentures were functioning properly. *Id*.

On summary judgment, Dr. Cammann explains she concluded replacement dentures were not medically necessary because:

> [She] determined on multiple occasions that Mr. Garza's dentures were otherwise functional and capable of chewing food: The removal appliances were stable. They had posterior occlusion, which allows him to masticate his food, and lateral excursions. He was only missing one artificial tooth, #11, on the upper denture, giving him 13 teeth to function with. On the lower partial denture, Mr. Garza had a total of 13 teeth to eat with. In all, he had 26 teeth to masticate food with. By comparison, a patient who has all their teeth in their mouth with "wisdom teeth" has 32. A majority of people have 28 teeth in their oral cavity once they have their wisdom teeth removed. In my experience, a patient like Mr. Garza would be perfectly capable of eating food either with his dentures or solely with his remaining teeth.

*Id*., ¶ 24. In addition, Dr. Cammann explained Garza's commissary records indicate he was capable of eating many types of food. For instance, Garza's 2018 commissary records

illustrate he purchased and presumably ate things such as chips, raisins, pork rinds, crackers, atomic fireball candy, mixed nuts, and Snickers. *Id.*, ¶ 25; Dkt. 28-17. After his May 17, 2019 appointment with Dr. Cammann, Garza continued to purchase and presumably eat similar items that would be difficult to consume if his dentures were not functioning, including Jolly Ranchers, Whoppers, Milk Duds, chips, tortillas, nuts, cookies, and crackers. *Id.* Finally, Dr. Cammann noted that Garza is 5'5 and weighs 240 pounds. *Id.* Dr. Cammann contends this could not occur if Garza was unable to eat. *Id.*

On summary judgment, the Corizon Defendants have shown Dr. Cammann was consistently responsive to Garza's dental needs and that her decision not to replace his dentures was medically acceptable. *Toguchi*, 391 F.3d at 1061. The burden thus shifts to Garza to set forth a genuine dispute of material fact as to the adequacy of Dr. Cammann's treatment. "Summary judgment is appropriate if the moving party presents evidence that shows that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting significant probative evidence tending to support its claim that material, triable issues of fact remain." *Ferguson v. Greater Pocatello Chamber of Commerce*, 848 F.2d 976, 979 (9th Cir. 1988).

The *only* evidence Garza submits on summary judgment is his May 14, 2019 grievance and his declaration, which both contend his dentures have teeth missing and wires protruding into his gums, causing him significant pain and an inability to chew or digest his food. Dkt. 27-3, ¶¶ 4-5, 12–13; Dkt. 33, at 3 (citing Dkt. 27-5); Dkt. 33-2 (incorporating Dkt. 27-3). Yet, Garza does not respond to Dr. Cammann's repeated

conclusion, after multiple evaluations of Garza's mouth and dentures, that, despite aesthetic damage to his dentures, Garza still had 26 out of 28 teeth, an even bite, an anchored lower partial denture, and the ability to chew food with his posterior teeth. Dkt. 28-6, ¶¶ 18, 20, 23, 24. Nor does Garza respond to Dr. Cammann's specific finding, after her evaluation on May 17, 2019, that Garza's dentures did not have any protruding wires and that the wires of which Garza complained were coated with acrylic and unexposed. *Id.*, ¶ 23. Garza also ignores Dr. Cammann's contentions that she smoothed and polished his dentures to ensure there were no wires protruding, that despite Garza's complaint of mouth sores as a result of protruding wires, she could not find any sores in his mouth, and that the mouth pain of which Garza complained was likely due to poor oral hygiene, and not a problem with his dentures, since there was no medical indication his dentures would impair his ability to eat. *Id.*

In the absence of any contradicting evidence—whether through expert testimony, recommendations from other treating providers, health records to support his claim that he is unable to eat, or any other probative evidence to suggest Dr. Cammann's refusal to replace his dentures was medically inappropriate[17]—Garza fails to show Defendants' failure to provide him with replacement dentures violated the Eighth Amendment. Garza's conclusory allegation that he needs replacement dentures is insufficient to overcome Dr.

---

[17] For instance, Garza does not submit declarations from other inmates to verify his complaint that he is unable to eat. He also does not cite any of his prison medical records to support his contention that he is unable to eat or has trouble digesting food. In fact, there are no health services records to suggest Garza was ever treated for weight loss or any other conditions associated with an inability to chew his food. Dkt. 28-7–28-14. Further, Garza's commissary purchases, height and weight also undermine his claim that he has difficulty chewing and digesting his food.

Cammann's consistent conclusion that replacement dentures are not medically necessary. *See, e.g. Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (explaining differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are insufficient to withstand summary judgment on a deliberate indifference claim); *Miles v. Daniels*, 231 Fed. App'x. 591, 592 (9th Cir. 2007) (affirming summary judgment in favor of defendant dentist where, *inter alia*, despite defendant's claimed symptoms, there was no evidence to suggest inmate's medical condition was exigent); *Kamakeeaina v. City & Cty. of Honolulu*, No. 11-00770 JMS/RLP, 2014 WL 1691611, at *18 (D. Haw. Apr. 29, 2014) (granting summary judgment on prisoner's Eighth Amendment claim against his treating physician where plaintiff did not submit any competent evidence to show defendant physician's treatment was medically unacceptable and plaintiff instead simply disagreed with defendant physician's "diagnosis concerning the care he required."); *Elliot v. Reddy*, No. 2:10-cv-02980 MCE KJN P., 2014 WL 1877566, at *26 (E.D. Cal. May 9, 2014) (granting summary judgment in favor of prison physician where plaintiff failed to present contradicting expert evidence, "or any other remarkable evidence of record" to contradict defendant's expert's opinion that physician's treatment met the appropriate standard of care).

Second, even if the Court were to instead conclude Garza's unsubstantiated allegations are sufficient to defeat summary judgment with respect to the adequacy of Dr. Cammann's treatment, Garza ignores the second prong of the subjective element of deliberate indifference all together, and does not present any evidence to suggest Dr. Cammann knew of and disregarded an excessive risk to his health when she refused to

provide him with replacement dentures.[18] *Toguchi*, 391 F.3d at 1058. As detailed herein, Dr. Cammann evaluated Garza's mouth and dentures every time he filed an HSR. After each evaluation, Dr. Cammann determined Garza's existing dentures were aesthetically damaged, but that repair and/or replacement was not required because the dentures were still functional. Dr. Cammann also took steps to adjust or smooth Garza's dentures to address his claims of discomfort. Even if Dr. Camman's conclusion that replacement dentures were not medically necessary was wrong, there is no evidence she was aware of a substantial risk of serious harm to Garza's health as a result of this decision. Instead, Dr. Cammann's consistent finding that the damage to Garza's dentures would not impact his ability to chew food, coupled with an absence of any evidence to the contrary, illustrates Dr. Cammann was not aware of, and did not consciously disregard, a serious risk of harm to Garza's health in denying him replacement dentures. Dkt. 28-6, ¶¶ 17, 18, 20, 23, 24, 25.

A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In addition to the insufficient evidence offered with respect to the adequacy of his medical treatment, Garza cannot survive summary judgment because he fails to show Dr. Cammann deliberately disregarded an excessive risk to his health in denying him replacement dentures.

---

[18] In fact, in his Response to the Corizon Defendants' Motion for Summary Judgment, Garza underscores Dr. Cammann was *not aware* that he purportedly had difficulty eating because she did not sit at meals with him, did not see how hard it was for him to chew food, and did not personally experience the difficulties he had when chewing and digesting food. Dkt. 33, at 3.

b.  Brewer and Tillemans

Garza also claims Brewer and Tillemans were deliberately indifferent because they "did not correct the unconstitutional actions of Defendant Cammann nor the illegal policy of having to wait 5 years to obtain [replacement] dentures." Dkt. 33, at 4. Brewer and Tillemans did not participate in Garza's medical treatment—their only interactions with Garza involved their review of his May 14, 2019 grievance. Garza's claim against Brewer and Tillemans fail because he has not set forth evidence to suggest Dr. Cammann's treatment was deliberately indifferent, and, in the absence of a constitutional injury, does not have standing to challenge the Dental SOP.[19]

c.  Corizon

To state a claim against a private entity performing state functions under *Monell*, a plaintiff must show: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe*, 237 F.3d at 1110–11. Garza's claim against Corizon fails as a matter of law because he has not shown that any individual state actors were deliberately indifferent to his dental condition. *Long v. Cty. of Los Angeles*, 442 F.3d 1178,

---

[19] As noted, Garza contends Defendants denied his request for replacement dentures based solely on the Dental SOP. As explained in detail, however, Dr. Cammann repeatedly concluded, after multiple evaluations of Garza's existing dentures, that replacement dentures were not medically necessary because Garza's existing dentures were functional. If Dr. Cammann had instead concluded (or there was other probative evidence to suggest) Garza needed replacement dentures, but Dr. Cammann did not order them due to the Dental SOP, the Court would be in the position to review the constitutionality of the Dental SOP. The Court is not in such position here because there is no evidence to suggest Dr. Cammann's decision not to order replacement dentures for Garza was medically inappropriate, regardless of the Dental SOP.

1186 (9th Cir. 2006) (explaining that to impose liability under *Monell*, a plaintiff must show that the entity's employees violated the plaintiff's constitutional rights); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm.").

Garza argues Corizon is liable because they enforce the Dental SOP and "this policy did and continues to subject Plaintiff to cruel and unusual punishment; not providing him replacement denture[s] because he is not eligible except once every 5 years." Dkt. 33, at 6. To prevail on his municipal liability claim, Garza must first set forth evidence that Dr. Cammann (or any other named Defendant) denied him medically necessary replacement dentures with a conscious disregard for his health. As explained above, Garza does not do so on summary judgment. Because Garza fails to support his deliberate indifference claim against Dr. Cammann—or any other Defendant—his *Monell* claim against Corizon fails as a matter of law. *Lockett v. Cty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (citing *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994)) (holding municipal defendants could not be held liable where no constitutional violation occurred).

### 5.  *Siegert's Motion for Summary Judgment (Dkt. 37)*

Garza also claims Siegert—the Health Services' Director for IDOC—was deliberately indifferent in denying his appeal of Tilleman's denial of his May 14, 2019 grievance. Siegert did not participate in Garza's dental treatment. Although Siegert is a Registered Nurse, she does not provide medical treatment to inmates and does not make determinations regarding specific medical treatment provided to inmates in her position as

Health Services Director. Dkt. 37-2, ¶ 3. Nor is Siegert a dentist. As such, Siegert was entitled to rely on the medical opinion of Dr. Cammann so long as a reasonable person would not have determined that Dr. Cammann's treatment of Garza was inferior. *Caplinger v. CCA*, 999 F. Supp. 2d 1203, 1217 (D. Idaho 2014) (citing *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1083 (2014). Because there is no evidence to suggest Dr. Cammann's treatment was medically unacceptable—let alone that Dr. Cammann's treatment should have appeared unacceptable to a person untrained in dentistry—Siegert is entitled to judgment as a matter of law. *Caplinger*, 999 F. Supp. 2d at 1217.

## IV. CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment and Garza's case is appropriately dismissed with prejudice.

## V.   ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Garza's Motion for Summary Judgment Against Dr. Cammann, Corizon, Brewer, Tillemans and Siegert (Dkt. 27) is DENIED;

2. The Corizon Defendants' Motion for Summary Judgment (Dkt. 28) is GRANTED;

3. Garza's Request to Grant Summary Judgment Against Defendant Rona Siegert (Dkt. 32) is DENIED;

4. Garza's Motion to Strike (Dkt. 34) is DENIED;

5. Siegert's Motion for Summary Judgment (Dkt. 37) is GRANTED;

6. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: March 31, 2021

David C. Nye
Chief U.S. District Court Judge