UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERINEO GARZA,<br><br>        Plaintiff,<br><br>        v.<br><br>CORIZON; SUSANNA CAMMANN, DDS; GEN BREWER; AMANDA TILLEMANS; and RONA SIEGERT,<br><br>        Defendants. | Case No. 1:19-cv-00275-DCN<br><br>MEMORANDUM DECISION AND ORDER |

# I. INTRODUCTION

Pending before the Court is Plaintiff Erineo Garza's Motion for Reconsideration (Dkt. 44) of the Court's Order denying Garza's Motion for Summary Judgment, and granting Motions for Summary Judgment by Defendants Corizon, Susanna Camman, DDS, Gen Brewer, and Amanda Tillemans' (collectively, the "Corizon Defendants") and Rona Siegert.[1]

---

[1] Siegert is the Health Services Director for the Idaho Department of Corrections. In his Motion for Reconsideration, Garza does not specifically mention Siegert, and does not address whether he also seeks reconsideration of the portion of the Court's order granting Siegert's Motion for Summary Judgment. Garza also does not specifically mention Corizon, Brewer, or Tillemans, and does not provide any argument regarding the Court's findings with respect to such defendants. While Garza's Motion for Reconsideration appears to focus solely on Dr. Cammann (as well as upon his recent dental treatment), the Court refers to Corizon, Dr. Cammann, Brewer, Tillemans, and Siegert collectively as "Defendants," but distinguishes the Corizon Defendants from Siegert where necessary.

The parties have filed their responsive briefing on the motions and/or the time for doing so has passed without response.[2]

Having reviewed the record, the Court finds the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court decides the pending motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons stated herein, the Court DENIES Garza's Motion for Reconsideration.

## II. BACKGROUND

The Court set forth the factual background pertaining to this case in its order denying Garza's Motion for Summary Judgment and granting summary judgment in favor of Defendants ("Summary Judgment Order"). Dkt. 42. To briefly provide context, Garza is an Idaho Department of Correction ("IDOC") inmate incarcerated in the Idaho State Correctional Institution ("ISCI"). At the time the summary judgment motions were filed, Garza was missing nearly all of his teeth and required the use of full upper, and partial lower, dentures. While Garza received new dentures on May 11, 2017, he repeatedly damaged them, requiring multiple repairs by his treating dentist, Dr. Susanna Cammann.

---

[2] After Defendants responded to Garza's Motion for Reconsideration, the Court requested supplemental briefing from the Corizon Defendants. Dkt. 45, Dkt. 46. The Corizon Defendants timely filed a supplemental response. Dkt. 47. Although the Court directed Garza to file a reply within two weeks of the supplemental response, he has not replied to either the Defendants' initial response or to the Corizon Defendants' supplemental response. Dkt. 46. The Court has waited an additional two months since those deadlines, however, Garza has still not filed anything as instructed.

MEMORANDUM DECISION AND ORDER - 2

Garza submitted a formal request for new dentures on May 1, 2019, but Dr. Cammann denied it after finding Garza's existing dentures were functional.

Pursuant to 42 U.S.C. § 1983, Garza brought the instant suit alleging Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by refusing to replace his dentures. The parties subsequently filed cross-motions for summary judgment. On March 31, 2021, the Court denied Garza's Motion for Summary Judgment, granted the Corizon Defendants and Siegerts' Motions for Summary Judgment, and entered judgment in favor of Defendants. Dkt. 42; Dkt. 43. On April 12, 2021, Garza filed the instant Motion for Reconsideration. Dkt. 44.

### III. LEGAL STANDARD

"A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend judgment) or Rule 60(b) (relief from judgment)." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). Because Garza does not identify whether his motion is brought pursuant to Rule 59(e) or Rule 60(b), the Court briefly outlines both standards.

In general, there are four grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which the judgment rests; (2) to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) if amendment is justified by an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008)

(citation omitted). Further, relief under Rule 59(e) is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted); *see also Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (explaining that a party must overcome a "high hurdle" to obtain relief under Rule 59(e) since only "highly unusual circumstances" will justify its application).

Rule 60(b) "provides for reconsideration only upon a showing of: (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief." *Sch. Dist. No. 1J*, 5 F.3d at 1263 (cleaned up). Like Rule 59(e), Rule 60(b) relief is extraordinary and may only be granted upon an adequate showing of exceptional circumstances. *Stevens v. ITT Sys., Inc.*, 868 F.2d 1040, 1041 n. 1 (9th Cir. 1989).

Under both Rule 59(e) and Rule 60(b), the moving party bears the burden of establishing grounds for relief. *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1130–31 (E.D. Cal. 2001). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Id.* at 1131 (cleaned up).

## IV. ANALYSIS

Garza appears to set forth six reasons for reconsideration: (1) Defendants have not disputed, and the Court failed to acknowledge or address, the pain he has and continues to

suffer as a result of not being able to chew and digest his food; (2) the Court erred in granting summary judgment because the caselaw supports Garza's claims; (3) the Court erred in granting summary judgment because the fact that Dr. Cammann did not witness the difficulty Garza has eating created a disputed material fact; (4) the Court erred in finding Garza lacked standing to challenge IDOC's standard operating procedure for oral care ("Dental SOP") which provides inmates are eligible to receive new or replacement dentures every five years; (5) the Court should have allowed Garza an opportunity to amend before entering judgment since he is pro se; and (6) after the summary judgment motions were filed, the Corizon Defendants have punitively and retaliatorily pulled Garza's remaining teeth and have placed him on a "baby food" diet he does not want. Dkt. 44, at 2–5.

The Court first addresses Garza's contentions regarding purported errors in the Summary Judgment Order, and then turns to his allegations regarding his recent dental treatment.

### A.  The Summary Judgment Order

The Court outlined the standard for an Eighth Amendment claim regarding prison medical care in its Initial Review Order and Summary Judgment Order, and explained why Garza failed to meet this standard in the latter. *See generally* Dkt. 5, Dkt. 42. Rather than repeating this analysis here, the Court incorporates the Initial Review Order and the Summary Judgment Order by reference. However, to frame its analysis with respect to Garza's Motion for Reconsideration, the Court notes that to establish deliberate indifference, an inmate must satisfy objective and subjective components of a two-part test.

*Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). In the context of prison medical treatment, a plaintiff must show a "serious medical need" to meet the objective component of deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). On summary judgment, the Court accepted that Garza's dental issues constitute a serious medical need. Dkt. 42, at 16. The objective element of deliberate indifference is thus not at issue.

To satisfy the subjective component of deliberate indifference, an inmate must show both that "'the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the inmate's health.'" *Edmo v. Corizon*, 935 F.3d 757, 786 (9th Cir. 2019) (brackets in original) (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)). The Court denied Garza's Motion for Summary Judgment, and entered judgment in favor of the Defendants, because Garza did not address either prong of the subjective component of deliberate indifference.

For the reasons explained below, Garza's Motion for Reconsideration does not offer any basis for the Court to alter this conclusion.

1. *Garza's Pain Due to an Inability to Eat*

Garza first asserts that Defendants have never "denied or disputed" that he is "in pain from not being able to chew and digest his food[.]" Dkt. 44, at 2. Garza also contends that, throughout the Summary Judgment Order, the Court "failed to acknowledge or address the pain and anguish Plaintiff has and continues to suffer by having no teeth to adequately chew and digest his food." *Id.* Neither contention is accurate.

The Corizon Defendants *repeatedly* denied, and submitted evidence to dispute, Garza's claim that he is in pain because he cannot chew and digest food. The Court also addressed such evidence extensively in the Summary Judgment Order. Dkt. 42, at 24–31. Rather than failing to acknowledge Garza's claim that he is pain because he has no teeth with which to chew, the Court carefully considered this allegation and ultimately determined there was simply no evidence to support it. Instead, all of the evidence in the record showed Garza can chew and digest food because his existing dentures are fully functional.

Specifically, after providing Garza with new dentures on May 17, 2017, and twice sending Garza's dentures to the lab for repair in 2017 and 2018, Dr. Cammann determined a third repair was not necessary in early 2019. Dkt. 28-6, ¶¶ 10, 17–18. Dr. Cammann reached this conclusion because, although one tooth (of fourteen) was missing from Garza's upper denture, Garza still had posterior occlusion[3] with lateral excursion[4], and could thus effectively chew food. *Id*. ¶ 17. Indeed, Garza confirmed during his January 4, 2019 appointment that he could eat with his dentures despite the missing tooth. *Id.* Accordingly, Dr. Cammann concluded it was not medically necessary to send Garza's dentures for additional repairs, or to order new dentures, because there was no reason the

---

[3] "Posterior occlusion" is defined as "the most effective contact of the molar and bicuspid teeth of both jaws that allows for all the natural movements of the jaws essential to normal mastication and closure." *Posterior occlusion*, MEDICAL DICTIONARY FOR DENTAL PROFESSIONS (2012).

[4] "Lateral excursion" is defined as "sideward movement of the [jaw] between the position of closure and the position in which cusps of opposing teeth are in vertical proximity." *Lateral excursion*, MEDICAL DICTIONARY FOR DENTAL PROFESSIONS (2012).

aesthetic damage would impair his ability to eat. *Id.* ¶ 18. Garza did not address or dispute this evidence on summary judgment.

Upon his request, Dr. Cammann reevaluated Garza's dentures on March 14, 2019. *Id.* ¶ 20. When Garza complained he was unable to eat tortillas because his dentures were damaged, Dr. Cammann checked Garza's dentures to ensure he still maintained posterior occlusion, and found that he did. *Id.* Dr. Cammann again determined the damage to Garza's dentures was aesthetic and did not impair his ability to chew food, including tortillas. *Id.* Garza did not address or dispute this evidence on summary judgment.

On May 1, 2019, Garza submitted a formal request for new dentures. *Id.* ¶ 22. Dr. Cammann denied the request because Garza's existing dentures were functional. *Id.* On summary judgment, Dr. Cammann explained she concluded new dentures were not medically necessary because:

> [She] had determined on multiple occasions that Mr. Garza's dentures were otherwise functional and capable of chewing food: The removal appliances were stable. They had posterior occlusion, which allows him to masticate his food, and lateral excursions. He was only missing one artificial tooth, #11, on the upper denture, giving him 13 teeth to function with. On the lower partial denture, Mr. Garza had a total of 13 teeth to eat with. In all, he had 26 teeth to masticate food with. By comparison, a patient who has all their teeth in their mouth with "wisdom teeth" has 32. A majority of people have 28 teeth in their oral cavity once they have their wisdom teeth removed. In my experience, a patient like Mr. Garza would be perfectly capable of eating food either with his dentures or solely with his remaining teeth.

Dkt. 28-6, ¶ 24. Again, Garza did not address or dispute this evidence on summary judgment.

In addition, Dr. Cammann highlighted Garza's commissary purchases indicate he is capable of eating many types of food which would be difficult to eat without functioning

dentures, including chips, cereal, pork rinds, mixed nuts, tortillas, many types of candy, cookies, and crackers. *Id.* ¶ 25. Dr. Cammann also noted Garza is morbidly obese, which contradicts his complaint that he cannot eat. *Id.* Although he contended his commissary purchases and weight are irrelevant, Garza did not otherwise dispute such evidence on summary judgment. Dkt. 33, at 5.

The Corizon Defendants also submitted detailed evidence to show that Dr. Cammann was not indifferent to Garza's purported pain, but instead made every attempt to address it. In addition to repeatedly evaluating Garza's dentures as described above, Dr. Cammann adjusted Garza's dentures on September 9, 2018, after he complained his upper dentures were causing him to bite his cheek. Dkt. 28-6, ¶ 15. On October 8, 2018, Dr. Cammann removed one of Garza's natural teeth because it had a periapical abscess. *Id.* ¶ 16. On January 4, 2019, Dr. Cammann smoothed the corners of Garza's natural teeth when he complained they were sharp. *Id.* ¶ 17. When Garza submitted a Health Services Request ("HSR") stating sharp wires were protruding from his dentures and poking his gums on May 17, 2019, Dr. Cammann again evaluated the dentures and determined there were no protruding wires and that the area of which Garza complained was still coated with acrylic. *Id.* ¶ 23. Nevertheless, Dr. Cammann smoothed and polished Garza's dentures. *Id.* She also checked Garza's mouth for sores (of which he complained) and could not find any. *Id.* Once again, Garza did not address or dispute any of this evidence on summary judgment.

Rather than responding to the extensive evidence the Corizon Defendants submitted to refute his claim that he was unable to chew or digest food, or Dr. Cammann's repeated conclusion—after multiple evaluations of Garza's dentures and mouth—that replacement

dentures were not necessary because Garza's existing dentures were fully functional, Garza relied solely on his own declaration to support his claim that he cannot chew and digest food. The Court acknowledged Garza's declaration, but explained Garza did not submit any evidence to support it. Dkt. 42, at 28–30. For instance, Garza did not submit a declaration from other inmates (or any other witnesses) to verify his claim that he cannot eat with his existing dentures. He did not reference—and there do not appear to be any— HSRs for dental care that Garza submitted but were not addressed. Nor did Garza submit any prison medical records to support his allegation that he is unable to chew or has trouble digesting food. In fact, despite his countless medical and dental visits during the time period at issue in this litigation, there are no medical records to suggest Garza has suffered any weight loss or any other conditions associated with an inability to chew or digest food. Dkt. 28-7–28-12. Dr. Cammann's declaration, and Garza's commissary purchases and weight, also illustrate Garza *can* eat and digest food.

Moreover, as explained in the Summary Judgment Order, even if the Court had accepted Garza's unsubstantiated allegations regarding his pain and inability to chew, Garza did not present any evidence to show Dr. Cammann was aware of, and disregarded, such pain when she denied his request for replacement dentures. *Id.* at 30–31. Instead, Dr. Cammann treated Garza, and reevaluated his dentures, every time he asked her to. After each such evaluation, Dr. Cammann determined Garza's existing dentures were aesthetically damaged, but that repair and/or replacement was not required because the dentures were still functional. As noted, Dr. Cammann also took steps to adjust or smooth Garza's dentures to address each of his specific claims of discomfort. Even if Dr.

Cammann's conclusion that replacement dentures were not medically necessary was wrong, there was—and still is—no evidence that she (or any other Defendant) was aware of a substantial risk to Garza's health as a result of this decision.

Because he still fails to address the second prong of the subjective component of deliberate indifference, Garza's first argument does not support reconsideration even if the Court now altered its decision and held Dr. Cammann's refusal to order new dentures was medically unacceptable. *Edmo*, 935 F.3d at 786. Neither the record on summary judgment, nor Garza's Motion for Reconsideration, contain any evidence to suggest Dr. Cammann (or any of the other Defendants) consciously disregarded an excessive risk to Garza's health by denying his request for new dentures.

### 2. *Eighth Amendment Caselaw Regarding Dental Care*

Garza next contends the Court erred in granting summary judgment because the law is clear that prison officials are deliberately indifferent if they do not provide dentures to inmates who need them to eat properly. This argument fails for two reasons. First, the Court specifically addressed, and distinguished, each of the cases Garza cites in his Motion for Reconsideration in its Summary Judgment Order.[5] *Compare* Dkt. 42, at 19–22 *with* Dkt. 44, at 3. Garza's attempt to rehash the significance of cases the Court has already considered is not an appropriate basis for reconsideration. *Backlund v. Barnhart*, 778 F.2d

---

[5] In another section of his Motion for Reconsideration, Garza cites *Scott v. Garcia*, 370 F. Supp. 2d 1056 (S.D. Cal. 2005)—a case not addressed in the summary judgment briefing or in the Summary Judgment Order—for the contention that the need to eat and digest food is a serious medical need. This Court agrees, and *accepted* that Garza's dental issues constitute a serious medical need in the Summary Judgment Order. Dkt. 42, at 16. Yet, as repeatedly explained herein, and in the Summary Judgment Order, there is no evidence to suggest the Defendants were deliberately indifferent to this need.

1386, 1388 (9th Cir. 1985) (explaining a motion for reconsideration is properly denied where it relies on arguments that were already raised in opposition to summary judgment). Second, unlike the plaintiffs in each of the cases he cites, Garza has dentures and there is no evidence that he is unable to eat. As explained above, and more extensively in the Summary Judgment Order, there is also no evidence to suggest any of the Defendants ignored or delayed in treating Garza's dental needs. Dkt. 42, at 19–22, 24–34.

### 3. Issue of Material Fact

Garza also argues this Court "acknowledged that Defendant Cammann did not see how hard it was for the Plaintiff to chew his food or to digest unchewed food as a result of his damaged dentures he sought to be replaced. This in itself created a material fact in disput[e] preventing summary judgment." Dkt. 44, at 3. As the Court explained in the Summary Judgment Order, the fact that Dr. Cammann did not see Garza's alleged difficulty chewing underscores that she was not aware of an excessive risk to Garza's health when she denied his request for replacement dentures. Dkt. 42, at 31 n. 18; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (noting deliberate indifference is present only when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") Because she repeatedly determined Garza's existing dentures were functional, and also had no indication that Garza was losing weight or suffering any other symptoms associated with an inability to eat or digest his food, Dr. Cammann did not consciously disregard an

excessive risk to Garza's health by denying his request for new dentures. There is no issue of material fact on this subject.

### 4. *Garza's Standing to Challenge the Dental SOP*

Garza next impugns the Court's finding that he lacked standing to challenge the constitutionality of the Dental SOP in the absence of a constitutional injury. Dkt. 42, at 18. In his Motion for Reconsideration, Garza argues: "Plaintiff had and continues to have standing as all IDOC inmates to not only challenge [the Dental SOP] but any SOP (policy) of the IDOC they deem unconstitutional." Dkt. 44, at 4–5. This is incorrect. As the Supreme Court explained in *Allen v. Wright*, 468 U.S 737, 751 (1984)[6]—a case Garza cites in his Motion for Reconsideration—a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief" in order to have standing. *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct") (cleaned up).

Here, Garza cannot establish he suffered a constitutional injury traceable to the Dental SOP because all of the evidence in the record illustrates Garza received constitutionally adequate dental care, irrespective of the Dental SOP.[7] Dkt. 42, at 24–31. Further, even if the Court reconsidered its finding regarding standing, Garza's claims

---

[6] *Allen* was abrogated on other grounds in *Lexmark Intern., Inc. v. Static Control Components, Inc*., 572 U.S. 118, 129 (2014).

[7] In addition, the Dental SOP is an IDOC, and not a Corizon policy. Dkt. 28-2, ¶ 7. Although the policy exists to decrease instances where inmates intentionally destroy, or negligently break, their existing dentures, IDOC will still, upon a grievance filed by an inmate, evaluate the inmate's individual circumstances before denying new dentures based on the Dental SOP. Dkt. 47-1, ¶ 12.

MEMORANDUM DECISION AND ORDER - 13

would still fail because, again, there is no evidence in the record to establish the subjective element of his deliberate indifference claim.

### 5. *Opportunity to Amend*

Finally, Garza argues:

> This Court further erred as in its ORDER pages 18–24 [it] states what Garza's complaint lacked. This Court failed to take into account Plaintiff has very little education, is not trained in the law, has no professional help, lack[s] access to a law library or case law to name but a few. Too, it never gave Plaintiff an opportunity to amend and point out deficiencies as it was required to do. The Court is to be patient with pro se litigants and are [*sic*] to liberally construe their pleadings. *Resnick v. Hayes*, 213 F.3d 443, 446 (9th Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999).

Dkt. 44, at 5.

Garza misunderstands the procedural posture of the case. The Court *did* liberally construe Garza's pleadings in its Initial Review Order, and determined he had plausibly alleged Eighth Amendment claims against the Defendants.[8] Dkt. 5. On summary judgment, a court cannot accept unsupported allegations. Where, as here, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the moving party is entitled

---

[8] In the Initial Review Order, the Court also pointed out the deficiencies in Garza's Complaint, and dismissed his claims against defendants Josh Tewalt, Debbie Field, David McCluskey, and Cindy Wilson. Dkt. 5, at 5. The Court specifically advised Garza that he could seek to amend his Complaint if he discovered facts sufficient to support the claims the Court had dismissed. *Id.* at 6. Later, when Defendants filed their motions for summary judgment, the Court also provided Garza with notice of his rights and obligations on summary judgment. Dkt. 38.

to judgment as a matter of law.[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This requirement does change if the plaintiff is pro se. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). "A district court lacks the power to act as a party's lawyer, even for *pro se* litigants." *Id.* Because Garza failed to present evidence to support either prong of the subjective element of deliberate indifference, the Court could not allow his claims to proceed past summary judgment.

Further, to permit Garza to amend post-judgment—particularly when he did not seek to amend at any time during the seventeen months between the Court's Initial Review Order and the Summary Judgment Order—would "simply grant him the forbidden 'second bite at the apple.'" *Weeks*, 246 F.3d at 1236 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). This is not the purpose of a motion for reconsideration. *Weeks*, 246 F.3d at 1236 (citing *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Garza's suggestion that he should be permitted to amend at this late juncture is "simply too little, too late."[10] *389 Orange Street Partners*, 179 F.3d at 665.

---

[9] Garza also suggests the Court "erred by dismissing this case with prejudice" and cites *Sterling v. United States*, 985 F.2d 411, 412 (8th Cir. 1993) in support. Again, Garza misunderstands the function of summary judgment. Dismissal with prejudice was required in this case because, on summary judgment, Garza did not address either prong of the subjective component of deliberate indifference. *Celotex*, 477 U.S. at 323. By contrast, in *Sterling*, the Eighth Circuit reviewed the lower court's dismissal of an inmate's claim pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute. *Sterling*, 985 F.2d at 412. In light of certain documents the inmate filed on appeal, the Eighth Circuit held the lower court should have given him the opportunity to explain his failure to prosecute, and reversed and remanded. *Id.* Here, this Court dismissed Garza's claims with prejudice only *after* he had fully prosecuted his claims. Indeed, Garza not only responded to Defendants' Motions for Summary Judgment, but also filed his own motions for summary judgment against the Corizon Defendants and Siegert. Given the procedural posture of the case when this Court entered summary judgment, Rule 41(b), and the *Sterling* court's holding, are simply inapplicable.

[10] Even if Garza's Motion for Reconsideration was construed as a motion to amend, it would still be denied as an untimely attempt to relitigate his case.

MEMORANDUM DECISION AND ORDER - 15

In short, the Court rejects Garza's claims regarding the purported errors in the Summary Judgment Order.

## B.  The Corizon Defendants' actions post-Summary Judgment

Garza also suggests reconsideration is appropriate because:

> Shortly after this matter having been submitted to the Court the Defendants blatantly pulled all of Plaintiff's remaining teeth except for one snag and refuse to provide him dentures for at least another year. Defendants have placed Plaintiff on a "modified consistency" diet which is basically pureed food and/or baby food and [are] telling him he has a year to wait before he can receive dentures. This is retaliatory and punitive in nature.

Dkt. 44, at 4.

The decision to pull Garza's remaining teeth initially concerned the Court because, on summary judgment, Dr. Cammann attested: "In my professional judgment, it was in Mr. Garza's best interest to keep his remaining lower teeth intact." Dkt. 28-6, ¶ 23. Dr. Cammann explained there "was no clinical reason" to remove Garza's three remaining teeth because "they were non-mobile and they served as good anchors for the partial lower dentures." *Id.* Given the apparent inconsistency between Dr. Cammann's declaration and Garza's allegations regarding his recent dental treatment, the Court ordered the Corizon Defendants "to substantively respond to Garza's allegations that his remaining teeth have been pulled or will be pulled and that he has been put on a 'baby food diet' until he is eligible for replacement dentures in 2022."[11] Dkt. 46.

---

[11] Garza's allegations could also potentially constitute "newly discovered evidence" warranting reconsideration under Rules 59(e) or 60(b).

**MEMORANDUM DECISION AND ORDER - 16**

The Corizon Defendants' Supplemental Response (Dkt. 47) illustrates that Garza's claims regarding his recent dental treatment are both procedurally improper and substantively inaccurate.

### 1. Procedural Bars to Reconsideration

Garza's allegations regarding his recent dental treatment do not support reconsideration for several procedural reasons. First, Dr. Cammann ceased working for Corizon full time, and Bryce Killian DDS, took over primary dental services at ISCI, in March 2020. Dr. Killian is not a named defendant in this case and any care he provided (including the care in March and April of 2021 that Garza now challenges) is beyond the scope of this lawsuit. Garza cannot use his Motion for Reconsideration to add a new party. *Nw. Acceptance Corp. v. Lynwood Equip., Inc.*, 841 F.2d 918, 925–26 (9th Cir. 1988) (explaining new claims were not properly raised in a motion for reconsideration); *Wapato Heritage, L.L.C. v. United States*, 423 Fed. Appx. 709, 711 (9th Cir. 2011) (finding district court appropriately denied reconsideration where plaintiff first sought to add new parties after the district court ruled against it on summary judgment).

Second, Garza did not submit any admissible evidence with his Motion for Reconsideration. Garza did not file a declaration, discovery documents, medical records, recommendations from an outside provider, or any other evidence to contradict the Court's findings with respect to any of the Defendants. A motion for reconsideration should not be used to ask the court "to rethink" what the court has "already thought through" merely because the party disagrees with the court's decision. *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (citation omitted). Further, Garza's continued

disagreement with Dr. Cammann's denial of his request for new dentures does not warrant reconsideration. *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.").

And third, Garza's Motion for Reconsideration appears to assert a new claim for First Amendment retaliation. As this Court has previously held, a party cannot use a Motion for Reconsideration "to assert a claim that he never brought in the first place." *Thomas v. Cassia Cty., Idaho*, No. 4:17-cv-0256-DCN, 2019 WL 5270200, at *7 (D. Idaho Oct. 17, 2019). Moreover, even if his attempt to add a new claim against a new party was not untimely and procedurally improper, Garza's Motion for Reconsideration does not address the elements of a First Amendment retaliation claim.[12] In short, Garza's belated claim of retaliation does not justify reconsideration.

### 2. *Substantive Bars to Reconsideration*

In addition to the aforementioned procedural improprieties, and, more importantly, Garza's Motion for Reconsideration is also substantively inaccurate. The evidence the Corizon Defendants submitted with their Supplemental Response illustrates Garza's remaining teeth were pulled—not only out of medical necessity due to rot and to avoid risk of infection—but also at Garza's request and with his consent. Further, contrary to his claim that Defendants put him on a "baby food" diet against his will and so Defendants

---

[12] Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) "An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).

could "flaunt[] the victory" on summary judgment, Garza requested and consented to a modified consistency diet, and can also return to a regular diet if he so chooses. Dkt. 44, at 2.

As mentioned, Dr. Killian took over primary dental services at ISCI in March 2020. On October 1, 2020, Garza presented to the dental clinic complaining that his upper denture was broken and making his gums sore. Dkt. 47-1, ¶ 10. Garza also complained that his lower denture was broken into several pieces, that some of the pieces were missing, and that the lower denture was loose as well. *Id.* Garza did not bring his lower denture with him on October 1, 2020, so Dr. Killian advised Garza to submit an HSR for another dental appointment so Dr. Killian could examine Garza's lower denture to see if it could be repaired. *Id.* As of the time of the Corizon Defendants supplementation, Garza had not set up an appointment for his lower denture. *Id.* ¶ 11.

However, during the appointment on October 1, 2020, Dr. Killian adjusted and smoothed Garza's upper denture to help relieve Garza's sore gum area. *Id.* ¶ 10. Dr. Killian noted that Garza still had good suction on his upper denture, which meant it was staying in place and was not loose when worn properly (with or without adhesive). *Id.* Garza confirmed that his upper denture was more comfortable after Dr. Killian made his adjustments. *Id.*

On January 25, 2021, Garza was seen by a dental hygienist after he filed an HSR asking to have his remaining teeth cleaned. *Id.* ¶ 13; Dkt. 47-3, at 2. The hygienist noted the roots of Garza's remaining teeth had "severe attrition" and "erosion." *Id.* at ¶ 13. On February 19, 2021, Garza submitted an HSR stating, "I only have three teeth remaining

and I would like or need to have them pulled because they are extremely worn, one is cracking and they are causing me so much pain." Dkt. 47-3, at 3. On February 26, 2021, Garza submitted an additional HSR noting, "I still have a sharp piece of my tooth that needs to come out, I need whatever teeth I have left pulled out too they hurt too." *Id.* at 4.

Garza was seen by a Registered Nurse on February 26, 2021, and was treated with Amoxicillin and Ibuprofen for his teeth. Dkt. 47-1, ¶ 14. A follow-up appointment was also scheduled with Dr. Killian. *Id.* On March 10, 2021, Garza requested a refill of Ibuprofen and indicated he still needed his teeth pulled because they were causing him pain. *Id.*, ¶ 16. Garza's Ibuprofen was refilled, and he was seen by Dr. Killian on March 22, 2021. *Id.*, ¶ 17. Dr. Killian found two of Garza's three remaining teeth were "rotted badly down to the nerve, infected, not fixable, and needed to be removed." *Id.* Garza consented to the removal of these two teeth. *Id.*

On April 28, 2021, Garza was seen by Dr. Killian and complained that his last remaining tooth was painful. *Id.*, ¶ 18. Dr. Killian examined Garza's last tooth and determine it "was rotted to the gum line" and was "not restorable." *Id.* Garza then consented to the removal of his last tooth.[13] *Id.*

Thus, although he alleges (without any evidentiary support) that the Corizon Defendants punitively pulled his remaining teeth in retaliation, the records illustrate such extractions were made at Garza's request, and only after Dr. Killian concluded Garza would be "at serious risk of future pain in the area of his decayed teeth" and could suffer

---

[13] Garza was provided local anesthetic when his teeth were removed, and was also prescribed pain medication and antibiotics when medically indicated. *Id.*, ¶¶ 17–19.

"potential severe infection and associated risks" if his teeth were not pulled. *Id.*, ¶ 19. While there was no clinical reason to pull Garza's three remaining teeth when Dr. Cammann last treated him in the Spring of 2020, the condition of his teeth had significantly deteriorated when, a year later, Dr. Killian determined it was medically necessary to extract them. *Compare* Dkt. 28-6, ¶ 23 *with* Dkt. 47-1, ¶ 19.

There is also no evidence to support Garza's claims that Defendants put him on a "baby food" diet against his will. Dkt. 44, at 2–3. ISCI inmates may request a modified consistency diet, or it may be offered to them. Dkt. 47-1, ¶ 8. Dr. Killian attested that the modified consistency diet is not offered through Corizon, but is instead developed and provided through IDOC. Dkt. 47-1, at ¶ 9. A modified consistency diet is described as "mainline menu or similar, w/soft food substitutions for foods that are particularly hard/crunchy." Dkt. 47-5, at 10. Dr. Killian explained the modified consistency diet is not baby food and that it provides "sufficient calories and nutrients for inmates at mealtimes." Dkt. 47-1, at ¶ 9.

Garza first signed a consent for the modified consistency diet on September 9, 2020—more than six months before the Summary Judgment Order issued.[14] Dkt. 47-5, at 10. Notably, there is a space on the authorization form for an inmate to refuse consent to a particular diet. *Id.* Garza did not fill in that space, and instead affirmatively assented to the modified consistency diet. *Id.* Garza's consent expired on December 31, 2020, and Garza

---

[14] This timing illustrates that Garza's allegations regarding the modified consistency diet do not constitute newly discovered evidence warranting reconsideration. A "party that fails to introduce facts in a motion or opposition cannot introduce them later in a motion to amend by claiming that they constitute 'newly discovered evidence' unless they were previously unavailable." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).

returned to a regular diet. On March 22, 2021, Garza again affirmatively consented to a modified consistency diet, to expire on May 22, 2021. Dkt. 47-5, at 9. Dr. Killian explained that Garza, like other ISCI inmates, can choose between IDOC's standard meal options. Dkt. 47-1, ¶ 19.

Garza's allegation that Defendants have forced him to consume the modified consistency diet he does not want is belied by the evidence on reconsideration. Further, Dr. Killian attested that Garza's "medical records, commissary records, and his appearance when he presented at my appointments with him does not suggest to me that there is a concern for Mr. Garza being at risk for significant or harmful weight loss, even if on the soft food diet." Dkt. 47-1, ¶ 9. Despite being on the modified consistency diet for three months in 2020, and two months in 2021, Garza's medical records illustrate he has not lost weight or suffered other adverse symptoms. *Id.*, ¶ 9. Instead, Garza's weight has increased over the last year. *Id.*; Dkt. 47-5, 6–8.

Finally, Garza's Motion for Reconsideration makes no mention of his existing full upper denture, which Dr. Killian repaired. *Id.*, ¶ 10. Nor does Garza address his partial lower denture, or Dr. Killian's directive, on October 1, 2020, to submit an HSR so Dr. Killian could examine and potentially repair it. *Id.* In fact, based on the records before the Court, Garza has never brought his lower denture with him to an appointment with Dr. Killian. *Id.* As the Corizon Defendants note, medical providers do not act with deliberate indifference to an inmate's serious medical need when the inmate refuses to comply with prescribed treatment. Dkt. 47, at 6 (citing cases)

///

## V. CONCLUSION

In sum, Garza has not offered any evidence or argument to warrant reconsideration. Rather, all of the evidence in the record illustrates Garza's dental treatment has been, and continues to be, medically appropriate, and that Defendants have been, and continue to be, consistently responsive to Garza's serious dental needs.

## VI. ORDER

1. Garza's Motion for Reconsideration (Dkt. 44) is **DENIED**.

DATED: September 10, 2021

David C. Nye
Chief U.S. District Court Judge